**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

GOLF CLUBS AWAY LLC, Individually and
On Behalf of a Class of Persons Similarly
Situated,

                Plaintiff,

      vs.

HOSTWAY CORPORATION, HOSTWAY
SERVICES, INC. and VALUEWEB,

                Defendants.

Case No. 11-62326-WJZ


**PLAINTIFF GOLF CLUBS AWAY'S MOTION TO REMAND AND FOR COSTS AND**
**EXPENSES WITH INCORPORATED MEMORANDUM OF LAW**


**MILBERG LLP**
Christopher S. Polaszek
201 North Franklin Street, Suite 3200
Tampa, FL 33601
Tel.:  (813) 367-5713
Fax:  (561) 892-8164
Email:  cpolaszek@milberg.com

**MILBERG LLP**
Benjamin Y. Kaufman
Gary S. Snitow
One Pennsylvania Plaza
New York, New York 10119-0165
(212) 594-5300

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................. 3

I.     LEGAL STANDARD ............................................................................ 3

II.    PLAINTIFF'S MOTION TO REMAND SHOULD BE GRANTED ............................ 6

     A.    Defendants' Notice of Removal was Untimely Pursuant to 28 U.S.C. § 1446(b) ............................................................ 6

     B.    Defendants' Notice of Removal Fails to Establish Federal Jurisdiction Under CAFA ..................................................... 8

III.   PLAINTIFF'S REQUESTS FOR COSTS AND EXPENSES SHOULD BE GRANTED UNDER 28 U.S.C. § 1447(C) ............................................ 14

CONCLUSION ............................................................................................. 16

LOCAL RULE 7.1(A)(3) CERTIFICATION ........................................................ 17

DOCS\579754v1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Addo v. Globe Life & Accident Ins. Co.*,
  230 F.3d 759 (5th Cir. 2000) ................................................................................... 7

*Allen v. Thomas*,
  No. 3:10-cv-742, 2011 U.S. Dist. LEXIS 5969 (M.D. Ala. Jan. 20, 2011) .................... 12, 14

*Banta v. Am. Med. Response Inc.*,
  No. CV 11-03586, 2011 U.S. Dist. LEXIS 77558 (C.D. Cal. July 15, 2011) ................... 7

*Bujanowski v. Kocontes*,
  359 F. App'x 112 (11th Cir. 2009) ........................................................................... 14

*Cruz v. Lowe's Home Ctrs., Inc.*,
  No. 8:09-cv-1030, 2009 U.S. Dist. LEXIS 66146 (M.D. Fla. July 21, 2009) .................. 3

*Englemann v. Hartford Casualty Ins. Co.*,
  No. 09-2274, 2009 U.S. Dist. LEXIS 122610 (M.D. Fla. Dec. 23, 2009) ...................... 11

*Exum v. State Farm Fire & Cas. Co.*,
  No. 11-206, 2011 U.S. Dist. LEXIS 125930 (M.D. Ala. Oct. 31, 2011) ........................ 4

*Gray v. New York Life Ins.*,
  906 F. Supp. 628 (N.D. Ala. 1995) .......................................................................... 15

*Green v. Travelers Indem. Co.*,
  No. 3:11-cv-922, 2011 U.S. Dist. LEXIS 120415 (M.D. Fla. Oct. 18, 2011) .................. 11

*ING USA Annuity & Life Ins. Co. v. J.P. Morgan Sec.*,
  No. 08-cv-1748, 2008 U.S. Dist. LEXIS 77817 (N.D. Ga. Sept. 30, 2008) .................... 7

*Leonard v. Enterprise Rent A Car*,
  279 F.3d 967 (11th Cir. 2002) ................................................................................. 3

*Liebig v. DeJoy*,
  814 F. Supp. 1074 (M.D. Fla. 1993) ......................................................................... 15

*Lowery v. Alabama Power Co.*,
  483 F.3d 1184 (11th Cir. 2007) ......................................................................... 5, 9, 10, 11

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) .............................................................................................. 14

*Miedema v. Maytag Corp.*,
  450 F.3d 1322 (11th Cir. 2006) ............................................................................... 3, 5

DOCS\579754v1

*Nichols v. Harbor Venture, Inc.*,
    284 F.3d 857 (8th Cir. 2002) ................................................................. 3

*Perez v. AT & T Co.*,
    139 F.3d 1368 (11th Cir. 1998) ........................................................ 3, 4

*Pretka v. Kolter City Plaza II, Inc.*,
    608 F.3d 744 (11th Cir. 2010) ..................................................... 4, 5, 7, 8

*Roe v. Michelin N. Am., Inc.*,
    613 F.3d 1058 (11th Cir. 2011) ............................................................ 8

*Shamrock Oil & Gas Corp. v. Sheets*,
    313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941) ............................ 3

*Stalvey v. Wal-Mart Stores E., LP*,
    No. 5:10-cv-206, 2010 U.S. Dist. LEXIS 103271 (M.D. Ga. Sept. 29, 2010) ..................... 15

*Stiglich v. Bankers Life & Casualty Co.*,
    No. 11-22123, 2011 U.S. Dist. LEXIS 128745 (S.D. Fla. Nov. 07, 2011) .......................... 3

*Stroh v. Colonial Bank, N.A.*,
    No. 4:08-cv-73, 2008 U.S. Dist. LEXIS 89540 (M.D. Ga. Nov. 4, 2008) ........................... 5

*Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*,
    No. 6:10-cv-1445, 2010 U.S. Dist. LEXIS 125559 (M.D. Fla. Nov. 3, 2010) ..................... 15

*Triggs v. John Crump Toyota, Inc.*,
    154 F.3d 1284 (11th Cir. 1998) ............................................................ 4

*Univ. of S. Ala. v. Am. Tobacco*,
    168 F.3d 405 (11th Cir. 1999) ............................................................. 3

*Williams v. Best Buy Co., Inc.*,
    269 F.3d 1316 (11th Cir. 2001) ........................................................ 4, 5

*Williams v. Litton Loan Servicing, LP*,
    No. 2:10-cv-951, 2011 U.S. Dist. LEXIS 15113 (M.D. Ala. Feb. 15, 2011) ...................... 14

*Williams v. Wal-Mart Stores, Inc.*,
    534 F. Supp. 2d 1239 (M.D. Ala. 2008) ............................................... 1

*Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*,
    668 F.2d 962 (7th Cir. 1982) ............................................................. 8

**STATUTES**

28 U.S.C. § 1332(d)(2),(6) ......................................................................... 5

28 U.S.C. § 1446 ........................................................................................................ 3, 8

28 U.S.C. § 1446(b) ....................................................................................................*passim*

28 U.S.C. § 1447(c) ...............................................................................................1, 14, 15

28 U.S.C. § 1453(b) ........................................................................................................ 2

Fla. Stat. §§ 501.201, *et seq.* ......................................................................................... 1

## OTHER AUTHORITIES

*Black's Law Dictionary* 1068 (9th ed. 2009) ................................................................ 9

DOCS\579754v1

Pursuant to Fed. R. Civ. P. 7(b), S.D. Fla. R. 7.1, and 28 U.S.C. § 1447(c), Plaintiff Golf Clubs Away ("Plaintiff") submits this Motion to Remand and For Costs and Expenses With Incorporated Memorandum of Law in support of its motion to remand this action to the Circuit Court for the 17th Judicial District in and for Broward County, Florida.

## INTRODUCTION

Two and a half years ago (on May 26, 2009), Plaintiff filed this consumer class action against Defendants Hostway Corporation, Hostway Services, Inc., and ValueWeb (a Hostway company) (collectively, "Hostway" or "Defendants") on behalf of itself and all other similarly situated persons who subscribe(d) to Defendants' ValueMail and/or ValueWeb e-mail services and whose e-mail addresses were "blacklisted" after November 1, 2008.

Plaintiff's Complaint was properly filed in Florida state Circuit Court and asserted Florida state law claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*; Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing; and Unjust Enrichment (the "Complaint"). The Complaint sought: (i) compensation for the damage caused by Defendants' illegal and wrongful acts and (ii) declaratory and injunctive relief to end the Defendants' improper practices.

After litigating the case for over two years, Defendants filed an improper, untimely, and deficient Notice of Removal in this Court on October 28, 2011. ECF No. 1. On November 3, 2011, this Court ordered Defendants to file an amended Notice of Removal by November 4, 2011, in order to correct deficiencies in the original removal notice. ECF No. 3. On November 4, 2011, Defendant filed an Amended Notice of Removal ("Notice").[1] ECF No. 4. Defendants'

---

[1] This Motion is being filed within 30 days of the filing of the Notice and is therefore timely. *See, e.g., Williams v. Wal-Mart Stores, Inc.*, 534 F. Supp. 2d 1239, 1242 (M.D. Ala. 2008) ("with the filing of an amended removal notice, the 30-day period for filing a remand motion should, in general, begin again.").

Notice, based solely on 28 U.S.C. § 1453(b), is untimely, improper, and an obvious gambit to forum-shop and delay the efficient resolution of this litigation.

Plaintiff properly initiated this action in May 2009 in Florida state court.  The Complaint alleges only causes of action under Florida law, not federal law.   The allegations in the Complaint[2] relate to the blacklisting of Defendants' "shared servers" and subsequent blocking of emails sent by Defendants' customers - the majority of whom were, and are, commercial enterprises who rely on their email systems for business communications.   Plaintiff and Defendants have been engaged in extensive class discovery for the last two years.    Defendants' sole (and improper) justification for the incredible timing of their attempted removal to this Court is the unremarkable, equivocal, and inadmissible answer to an improper question (which was properly and timely objected to) provided by Gary Miller, Plaintiff's CEO, during his deposition on October 11, 2011.

Specifically, Defendants belatedly argue that they can establish federal jurisdiction under the Class Action Fairness Act ("CAFA") because they have only now learned for the first time that the amount in controversy exceeds $5,000,000.  This argument fails for two primary reasons. First, Defendants' Notice was untimely because the Complaint, as well as information in Defendants' possession, would have provided Defendants with an independent, objective basis to seek the timely removal of this action long ago, in June 2009 (within 30 days of the filing of the Complaint).  Second, the inadmissible testimony provided by Mr. Miller, upon which Defendants base their attempt at removal, fails to provide Defendants with the type of unequivocal information necessary to justify and uphold a challenged removal attempt.

---

[2] Citations in the form "¶ __" are to the Complaint, a copy of which is attached to the Polaszek Declaration ("Polaszek Dec.") as Exhibit A.

Therefore, as Defendants' Notice is both untimely and deficient, this case must be remanded to the Circuit Court for the 17th Judicial District in and for Broward County, Florida, where it properly belongs and where it has been pending since May 2009.

## ARGUMENT

## I.     LEGAL STANDARD

"A removing defendant has the burden of establishing both federal jurisdiction and compliance with the procedures for removal set forth in 28 U.S.C. § 1446, as a matter of fact and law." *Cruz v. Lowe's Home Ctrs., Inc.*, No. 8:09-cv-1030, 2009 U.S. Dist. LEXIS 66146, at *3 (M.D. Fla. July 21, 2009) (citing *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). "Because removal is a statutory right it 'should be construed strictly in favor of state court jurisdiction.'" *Id.* (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941)); *accord Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002) ("Removal statutes must be strictly construed because they impede upon states' rights to resolve controversies in their own courts.").

Further, the "Eleventh Circuit recognizes that federal courts are directed to construe removal statutes strictly and to resolve all doubts about jurisdiction in favor of remand to state court." *Stiglich v. Bankers Life & Casualty Co.*, No. 11-22123, 2011 U.S. Dist. LEXIS 128745, at *5 (S.D. Fla. Nov. 07, 2011) (citing *Univ. of S. Ala. v. Am. Tobacco*, 168 F.3d 405, 411 (11th Cir. 1999) and *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941)). Therefore, "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Cruz*, 2009 U.S. Dist. LEXIS 66146, at *3; *accord Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006).

Thus, it is not surprising that "in evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)).

Against this backdrop, Title 28, Section 1446(b) governs the time limits for removal and states:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

In *Exum v. State Farm Fire & Cas. Co.*, No. 11-206, 2011 U.S. Dist. LEXIS 125930, at *6 (M.D. Ala. Oct. 31, 2011), the court recently noted that 28 U.S.C. § 1446(b) provides for removal "at two procedurally distinct moments in time."

> First, if it is facially apparent from the initial pleading that subject matter jurisdiction exists, the first paragraph of § 1446(b) provides the procedure for removal. *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001); 28 U.S.C. § 1446(b). Such a removal must be accomplished "within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based." § 1446(b) (paragraph one). However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." § 1446(b) (paragraph two).

4

*Id.*

Thus, under 28 U.S.C. § 1446(b) a defendant must remove within 30 days of receipt of the complaint, where it is facially apparent that the damages exceed the threshold amount. Only where it is not apparent from the face of the complaint at issue and from other information in a defendants' possession may a defendant "rely on a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . ." when filing a notice of removal. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 760 (11th Cir. 2010).

Under CAFA, federal courts have original jurisdiction over class actions in which the aggregate of the claims of individual class members exceeds $5,000,000 and "'there is minimal diversity (at least one plaintiff and one defendant are from different states).'" *Stroh v. Colonial Bank, N.A.*, No. 4:08-cv-73, 2008 U.S. Dist. LEXIS 89540, at *4 (M.D. Ga. Nov. 4, 2008) (quoting *Miedema*, 450 F.3d at 1327 (11th Cir. 2006); *see also* 28 U.S.C. § 1332(d)(2),(6). "Where . . . the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka*, 608 F.3d at 752 (11th Cir. 2010) (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

However, any such evidence used, proffered, and relied upon by a defendant seeking removal, must "unambiguously establish federal jurisdiction." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007); *see also Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001) ("A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden.").

As more fully explained below, Defendants have failed to meet the requirements of 28 U.S.C. § 1446(b) and satisfy their accompanying burden.  Accordingly, this case should be remanded back to the Circuit Court for the 17th Judicial District in and for Broward County, Florida.

## II. PLAINTIFF'S MOTION TO REMAND SHOULD BE GRANTED

### A. Defendants' Notice of Removal was Untimely Pursuant to 28 U.S.C. § 1446(b)

Defendants improperly removed this case from the 17th Judicial Circuit almost two and a half years after it was initially filed.  Although the Complaint does not expressly state the amount of damages Plaintiff would be seeking on behalf of the class, information regarding the size of the damages sought by Plaintiff was readily ascertainable from the Complaint itself and from information within Defendants' possession and control.  The Complaint lists the following categories of damages that Plaintiff was seeking on behalf of the putative class:

> Actual damages on behalf of consumers injured by the deceptive and unfair acts or practices of Defendants, in accordance with § 501.207(l)(c), Fla. Stat. (2009); reimbursement to Plaintiff and Class members in accordance with §501.207(3), Fla. Stat. (2009); or ordering restitution for Defendants' unjust enrichment to consumers in accordance with the equitable powers of the court; ordering Defendants to disgorge of ill-gotten revenues, profits or other remunerations they wrongfully obtained at the expense of the Plaintiff and Class members in accordance with § 501.207(3), Fla. Stat. (2009); Assessing Defendants civil penalties in the amount of ten thousand dollars ($10,000) for each violation of Chapter 501, Part II, pursuant to § 501.2075, Fla. Stat. (2009), and fifteen thousand dollars ($15,000) for each violation of Chapter 501, Part II, pursuant to § 501.207, Fla. Stat. (2009); awarding Plaintiffs and the Class compensatory damages and pre-judgment and post-judgment interest as a result of Defendants' wrongful conduct; awarding reasonable attorney's fees, filing fees, expert fees and costs to Plaintiff and the Class members, pursuant to §§ 501.2105 and 501.2075, Fla. Stat. (2009).

*See* Polaszek Dec. Ex. 1 at Prayer for Relief (c) - (j).

Defendants have produced documents in this action, which demonstrate that the issues raised in the Complaint were widespread and if Plaintiff's theory is correct it could be liable for

6

well in excess of five million dollars.  Further, based on Defendants' own knowledge (as admitted by designated corporate representatives who were deposed on June 17, 2011 and July 21, 2011) and records, they knew of the problems alleged in this lawsuit years before the Complaint was even filed, and were also aware that there may be over 1500 putative class members well before the Notice was filed.[3]  Defendants' knowledge of these facts provided them with information that would have allowed them to "'intelligently ascertain' removability from the face of the complaint" which began the "thirty day statutory limitation period."  *ING USA Annuity & Life Ins. Co. v. J.P. Morgan Sec.*, No. 08-cv-1748, 2008 U.S. Dist. LEXIS 77817, at *6 (N.D. Ga. Sept. 30, 2008) ("The consensus of the district courts in this circuit seems to be that a defendant must be able to 'intelligently ascertain' removability from the face of the complaint in order for the thirty day statutory limitation period to begin.").[4]

Not only should have Defendants sought removal long ago, but they seemingly ignore that "Section 1446(b) is based on 'the recognized policy of the federal courts to require, as far as possible, prompt action on the part of those seeking a removal so as to avoid the evils of the delay necessarily attendant upon the change of forum.'"  *Pretka,* 608 F.3d at 767 (quoting 2 Cyclopedia of Federal Procedure § 3:101, at 521 (3d ed., rev. 2006)); (*also* citing*, e.g., Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) ("[T]he purpose of the

---

[3] Defendants, in response to Plaintiff's First Set of Interrogatories confirmed that as of August 25, 2008, there were 1593 Valuemail Pro subscribers.  This response was served on Plaintiff on January 14, 2011.  Subsequently, on May 6, 2011, Defendants served Plaintiff with an amended and verified response to Plaintiff's First Set of Interrogatories and modified their response to indicate that there were in fact 1543 Valuemail Pro subscribers as of August 25, 2008.  Thus, at latest Defendant knew that the potential class was at over 1500 by January 14, 2011, well over 30 days from the time the Notice was filed.

[4] In fact, in a strikingly similar case, a court specifically held that "where a defendant in the exercise of diligence could readily ascertain, on the basis of information within its (often sole) possession, that the amount in controversy exceeds the jurisdictional minimum, it must remove the action to federal court upon receipt of the complaint even though the complaint may be indefinite on its face as to the amount in controversy."  *Banta v. Am. Med. Response Inc.*, No. CV 11-03586, 2011 U.S. Dist. LEXIS 77558, at *5 (C.D. Cal. July 15, 2011).

7

removal statute [is] to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit."); *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982) (noting that one purpose of § 1446(b) is "to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court")).

As the Eleventh Circuit explained, "to force a defendant to tarry in state court when he has evidence establishing his right to be in federal court, and to force state courts to waste their resources on cases that will eventually be decided in federal court, cannot be what Congress had in mind when it enacted § 1446." *Pretka*, 608, F.3d at 767.  In 2009, Defendants could have used "affidavits, declarations, or other documentation" in seeking removal at the outset of this action.  *Id*. at 755.  As demonstrated, Defendants had no reason to wait until October 2011 and the deposition of Gary Miller to finally conclude that there was a basis to file their Notice. Indeed, they could have used the information contained in the Complaint as well as the information in their possession to remove this case in 2009.  At that point, the Court could have made "'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case [wa]s removable." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2011).  Defendants' failure to do so and failure to give the Court the opportunity to make this determination much earlier in this action makes their Notice untimely and therefore, this Motion should be granted.

**B.    Defendants' Notice of Removal Fails to Establish Federal Jurisdiction Under CAFA**

Even if Defendants' Notice was timely, which it is not, Defendants have failed to meet their burden in establishing federal jurisdiction by a preponderance of the evidence.  Defendants'

8

Notice is based, and relies on the second paragraph of 28 U.S.C. § 1446(b), which requires Defendants to demonstrate that there was an "other paper" received from the Plaintiff and from which "the defendant . . . 'first ascertain[ed]' that federal jurisdiction exists." *Lowery*, 483 F.3d at 1213 n.63. The only new information Defendants now claim to possess, which they argue has made this action removable, is the equivocal and inadmissible testimony of Gary Miller.

Specifically, Defendants assert, that "[f]or the first time, Golf Clubs Away contended during the deposition that the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs." ECF No. 4 (Dfts. Amended Notice of Removal) ¶ 28. However, the very next paragraph, paragraph 29, of the Notice undermines the unequivocal nature of paragraph 28. Defendants cite to the deposition transcript of lay witness Gary Miller at page 240 lines 4-9, where Mr. Miller, after Plaintiff's counsel objected to the form of the question, testified that damages **"may"** exceed five million dollars.[5]

Mr. Miller's ambiguous answer to this improper question far from establishes by the preponderance of the evidence that CAFA's jurisdictional requirement of at least five million dollars as the amount in controversy has been satisfied. As the Eleventh Circuit has made clear, "under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff . . . and determines whether that document and the notice of removal **unambiguously** establish federal jurisdiction." *Lowery*, 483 F.3d at 1214 (emphasis added). Thus, the document -- the deposition transcript -- "must contain an unambiguous statement that clearly establishes federal jurisdiction" which in this case involves

---

[5] *Black's Law Dictionary* defines the word "may" to mean "[t]o be a possibility" and gives the example "we may win on appeal." *Black's Law Dictionary* 1068 (9th ed. 2009). Similarly, "may" is defined on Dictionary.com as an "auxiliary verb" "used to express possibility." http://dictionary.reference.com/browse/may (last visited on Dec. 2, 2011).

the amount in controversy.  *Id.* at 1213 n.63.  On its face, and definition, Mr. Miller's answer -- "it may" -- cannot be viewed as an unambiguous statement which supports removal.

Notably, the standard under the second paragraph of 28 U.S.C § 1446(b) -- where a defendant must show by the preponderance of the evidence that the removing document unambiguously establishes federal jurisdiction --  requires a "greater level of certainty" than does the first paragraph of 28 U.S.C § 1446(b).  While Defendants or the Court may have been able to ascertain the value of the amount in controversy from the Complaint based on its own deduction or information in its possession, had defendants filed a notice of removal within 30 days of the Complaint they filed, under the second paragraph of § 1446(b) it is not permitted to do so.  Therefore, Defendants must demonstrate that they have received from Plaintiff an unambiguous statement establishing federal jurisdiction without resorting to any conjecture by them or the Court and as discussed they have failed to provide such a definitive statement.  *See Lowery*, 483 F.3d at 1213.

Moreover, the entire line of questioning upon which Defendants base their Notice is objectionable and does not support federal jurisdiction based on CAFA's amount in controversy requirement.  Defendants selectively cite page 240 of the Miller deposition in support of its Notice.  However, this selective response and the accompanying line of questioning was, in reality, a summary of an earlier line of impermissible, objectionable, and speculative questioning of a lay witness.  For instance, pages 216-17 of the Miller deposition transcript memorializes the following exchange between Scott Walton (counsel for the Defendants), and Mr. Miller:

```
7    Q.    [By Mr. Walton] We were talking about the Class
8         and damages and the injury and that sort
9         of thing.
10        Assuming that Hostway has
11        hundreds of thousands of customers,
12        certainly since 2007 to present, how much
```

10

13 do you think in the aggregate the damages
14 in this case are if a Class is certified?
15 MR. POLASZEK:  Objection to
16 form.
17 A. I guess I won't know until we
18 see how many of those customers were
19 affected.
20 Q. Fair enough.
21 Let's assume that every customer
22 is affected at one time or another over
23 the last five years, hundreds of thousands
24 of customers who have paid several
25 hundreds of dollars in fees, would you

<div align="center">217</div>

2 agree with me that it's possible that the
3 Class-wide putative damages would be over
4 $1 million?
5 MR. POLASZEK:  Objection to
6 form.
7 A. Yes.
8 Q. Would you agree that it could
9 even be over $5 million?
10 MR. POLASZEK:  Objection to
11 form.
12 A. Yes.

A review of this section indicates that Mr. Miller's testimony cannot be used to establish CAFA's amount in controversy requirement.  Mr. Miller did not, cannot, and will not testify as a damages expert in this litigation, but rather as a lay witness, and his answers were given in response to an improper hypothetical question, the underlying basis of which has not and cannot be determined at this juncture.  As courts in this District interpreting *Lowery* have made clear, where "the jurisdictional amount is not clear or readily deducible from the face of the removing documents, then 'the court must remand.'" *Green v. Travelers Indem. Co.*, No. 3:11-cv-922, 2011 U.S. Dist. LEXIS 120415, at *6 (M.D. Fla. Oct. 18, 2011) (quoting *Lowery*, 483 F.3d at 1211); *see also Englemann v. Hartford Cas. Ins. Co.*, No. 09-2274, 2009 U.S. Dist. LEXIS 122610 (M.D. Fla. Dec. 23, 2009).  If anything, this line of hypothetical questions, if it were

<div align="center">11</div>

proper, demonstrates that Defendants had the means themselves to determine that the CAFA monetary threshold was met when they received the Complaint.

A court within this Circuit has recently dealt with a similar issue.  In *Allen v. Thomas*, No. 3:10-cv-742, 2011 U.S. Dist. LEXIS 5969, at *15-21 (M.D. Ala. Jan. 20, 2011), one of the questions the court addressed was "whether Plaintiff's deposition testimony is an 'unambiguous statement' clearly establishing the amount in controversy under *Lowery's* reasoning."  In *Allen*, the court found that the plaintiffs' statements regarding the value of punitive damages in excess of one million dollars were not enough to establish federal jurisdiction.  The Court further found that the whole of Plaintiff's testimony made clear that he did not know the exact amount of damages and that his statement regarding damages was an "amount thrown out there" but was "not an unambiguous statement that clearly establishes the amount in controversy."  *Id.* at *20. Similarly, in this case, Mr. Miller was merely addressing an objectionable hypothetical posed to him.  In fact, when Mr. Miller was asked about his knowledge of the amount of damages he stated that he did not know what the damages were.  Specifically, his testimony was as follows:

<div style="margin-left:2em;">

205

8     Q.     [By Mr. Walton] What damages do you think would
9     be sufficient to compensate you for your
10    injury in this case?
11    A.     I have not tried to calculate
12    those damages yet.  Part of it would be
13    hopefully in discovery we find out more
14    about what e-mails may or may not have
15    been missed, how many there were, then if
16    I have an understanding of how many
17    potential orders I missed from individuals
18    and another things, which is incalculable,
19    which is I would have to sit down and
20    mess with experts, which is to figure out
21    from the potential partners that we were
22    talking to at the time, what the value of
23    their business could have been over years
24    if they got a bad impression of Golf

</div>

12

25      Clubs Away because e-mails weren't being

                                        206
1       MILLER
2       received or sent.
3       Q.      Okay.
4       Reimbursement or restitution,
5       how much have you paid, when I say you I
6       mean Golf Clubs Away, how much have you
7       paid Hostway over the years?
8       A.      Oh, at $9.95 a month, five
9       years, that's $720?  Around there.
10      Q.      I'll check it later.  I suppose
11      it's less than ten.
12      MR. POLASZEK:  I think it's 600;
13      isn't it?
14      THE WITNESS:  600.
15      MR. POLASZEK:  Somewhere less
16      than that.
17      THE WITNESS:  Might be on the
18      spot.
19      Q.      The next category is
20      disgorgement of profits.  Do you have any
21      personal knowledge of how much that would
22      be?
23      A.      No.
24      Q.      You don't intend to testify
25      about that?

                                        207
1       MILLER
2       A.      No.
3       MR. POLASZEK:  Objection to
4       form.
5       Q.      Next one is civil penalties in
6       the amount of $10,000 and $15,000 for
7       each violation.
8       How much do you think that adds
9       up to with respect to each violation that
10      you allege in this case?
11      MR. POLASZEK:  Objection to
12      form.
13      A.      I don't know.
14      Q.      Is it one violation, because
15      we're really talking about just the
16      November/December era?

                                        13

17     MR. POLASZEK:  Objection to
18     form.
19     A.      I would think that the lawyers
20     and/or experts would be in a better
21     position than me.

Once again, Mr. Miller's testimony falls dramatically short of unambiguously establishing the amount in controversy.  As the court in *Allen* stated, "[t]o rule otherwise would do nothing more than provide an incentive for counsel to tighten the screws on lay plaintiffs concerning their subjective and uninformed valuation of their cases in the hopes of soliciting a singular admission that can be cited out of context to put a claim for unspecified damages on the highway of removal to federal court." *Allen v. Thomas*, 2011 U.S. Dist. LEXIS 5969, at *20.  As such, the deposition testimony of Gary Miller fails to establish the jurisdictional requirements for removal under CAFA based on the amount in controversy and therefore, this case must be remanded back to state court.

## III.    PLAINTIFF'S REQUESTS FOR COSTS AND EXPENSES SHOULD BE GRANTED UNDER 28 U.S.C. § 1447(C)

Under 28 U.S.C. § 1447(c), when a court remands an action back to state court, it may award the plaintiffs the costs and expenses, including attorney's fees, associated with the removal.  "The standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  *Id.*  The "'appropriate test for awarding fees under § 1447(c)' is to balance deterring 'removals sought for the purpose of prolonging litigation and imposing costs on the other party,' and safeguarding defendants' statutory right 'to remove as a general matter, when the statutory criteria are satisfied.'"  *Williams v. Litton Loan Servicing, LP*,  No. 2:10-cv-951, 2011 U.S. Dist. LEXIS 15113, at *24 (M.D. Ala.  Feb. 15, 2011) (quoting *Bujanowski v.*

14

*Kocontes*, 359 F. App'x 112, 113-14 (11th Cir. 2009).  "The decision as to whether to award fees under § 1447(c) turns primarily, if not solely, on the merit of the removal."  *Gray v. New York Life Ins.*, 906 F. Supp. 628, 637 (N.D. Ala. 1995).

A showing of "bad faith" or improper purpose, such as to prolong or increase the costs of litigation, is not necessary to support an award under section 1447(c).  *Stalvey v. Wal-Mart Stores E., LP*, No. 5:10-cv-206, 2010 U.S. Dist. LEXIS 103271, at *2 (M.D. Ga. Sept. 29, 2010) (quoting *Gray*, *supra)*.  In the end, "[w]hether to award fees and costs under this section is within the Court's sole discretion."  *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, No. 6:10-cv-1445, 2010 U.S. Dist. LEXIS 125559, at *29 (M.D. Fla. Nov. 3, 2010).

As discussed in detail above, Plaintiff challenges Defendants' Notice under two theories: (1) that it was untimely under the first paragraph of 28 U.S.C. § 1446(b); or in the alternative (2) that it was facially deficient based on the established Eleventh Circuit law concerning removal under the second paragraph of 28 U.S.C. § 1446(b).  Under either theory, Plaintiff is entitled to costs and expenses associated with Defendants' untimely and improper attempt to remove this matter to this Court.

Under Plaintiff's first theory discussed above, Defendants' Notice was untimely.  "Untimely removal is a basis for an award of attorney's fees."  *Stalvey*, 2010 U.S. Dist. LEXIS 103271, at *3; *see also Liebig v. DeJoy*, 814 F. Supp. 1074, 1077 (M.D. Fla. 1993) (concluding that an award of attorney's fees was appropriate as a matter of fairness when the notice of removal was untimely and improper, even when the Defendant may have acted in good faith in effectuating removal).  Here, while 28 U.S.C. § 1446(b) requires a defendant to file a removal notice within 30 days of the filing of a complaint, Defendants waited a staggering ***892 days*** after the Complaint was filed to file their Notice.  Defendants could have ascertained from the

15

Complaint that the amount in controversy was more than five million dollars, and therefore, could have removed this action in 2009.  Defendants failure to do so makes their current Notice untimely and as such, Defendants' lacked an objectively reasonable basis for removal at this time.

Even if the current removal is not untimely, the removal, which is based on an equivocal and ambiguous statement of Plaintiff's CEO, cannot under any circumstance qualify as an unambiguous statement necessary to establish federal jurisdiction.  As discussed above, the deposition testimony clearly demonstrates that Gary Miller (a lay witness) neither knew, nor possessed the ability to provide information relating to, the amount of damages.  In fact, the answers provided during the deposition were based on improper hypothetical questions posed to a lay witness.  And, Mr. Miller's response was equally hypothetical.  Thus, because Gary Miller's response of "it may" to whether the damages in this action exceed five million dollars forms the sole basis for establishing the amount in controversy at this juncture -- and that statement is by definition ambiguous and not definitive -- Defendants do not have an objectively reasonable basis for removal.  As a result, under either of Plaintiff's theories, cost and expenses should be awarded to Plaintiff.

## CONCLUSION

As cited above, in the Eleventh Circuit, federal courts are directed to construe removal statutes strictly and to resolve all doubts about jurisdiction in favor of remand to state court. Here, there are no doubts for the Court to resolve.  Defendants' attempted removal was untimely, deficient, and improper.  Therefore, Plaintiff's motion to remand should be granted and Plaintiff should be awarded the costs and expenses associated with challenging Defendants' improper removal in this forum.

## <u>LOCAL RULE 7.1(A)(3) CERTIFICATION</u>

Prior to filing this motion, counsel for the Plaintiff conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Dated:  December 2, 2011

**MILBERG LLP**

By:   /s Christopher S. Polaszek
Christopher S. Polaszek
201 North Franklin Street, Suite 3200
Tampa, FL  33601
Tel.: (813) 367-5713
Fax: (561) 892-8164
Email:  cpolaszek@milberg.com

Benjamin Y. Kaufman
Gary S. Snitow
One Pennsylvania Plaza, 48th Floor
New York, NY  10119
Tel:  (212) 594-5300
Fax: (212) 868-1229
Email:  gsnitow@milberg.com
Email:  bkaufman@milberg.com

*Attorneys for Plaintiff*

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 2, 2011, I electronically filed the foregoing **Plaintiff Golf Clubs Away's Motion to Remand and For Costs and Expenses With Incorporated Memorandum of Law** with the Clerk of  Court using the CM/ECF system, which will send notifications of such filing to the email addresses indicated on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing via the U.S. Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.


/s/ Christopher S. Polaszek
Christopher S. Polaszek

18

# I.     Mailing Information for a Case 0:11-cv-62326-RNS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mark David Nichols**
  mark@pcpalaw.com,monica@pcpalaw.com,loriq@pcpalaw.com
- **Christopher Stephen Polaszek**
  cpolaszek@milberg.com,MAOffice@milberg.com
- **Jon Polenberg**
  jon@pcpalaw.com,monica@pcpalaw.com

## Manual Notice List

The following is the list of parties who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`

19